IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Benjamin Heyward,<br><br>      Plaintiff,<br><br> vs.<br><br>A. Price,<br><br>      Defendant. | Civil Action No. 6:18-150-JFA-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

    This matter is before the court on the defendant's motion for summary judgment (doc. 86) and the plaintiff's motion for summary judgment (doc. 96). Also pending are the plaintiff's motions for discovery (docs. 89, 102). The plaintiff, a state prisoner proceeding *pro se*, filed this action pursuant to Title 42, United States Code, Section 1983, alleging excessive force was used against him in violation of his constitutional rights. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under § 1983, and submit findings and recommendations to the district court.

    The defendant filed a motion for summary judgment on August 20, 2018 (doc. 86). By order filed August 22, 2018, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately to the motion (doc. 87). On August 29, 2018, the plaintiff filed his response in opposition to the defendants' motion for summary judgment (doc. 90). On September 7, 2018, the plaintiff filed his own motion for summary judgment (doc. 96), and the defendant filed a response in opposition on September 19,

2018 (doc. 103). The plaintiff filed a reply in support of his motion on September 26, 2018 (doc. 109).

## FACTS PRESENTED

The incident at issue occurred on April 13, 2017, at Kershaw Correctional Institution, part of the South Carolina Department of Corrections ("SCDC"), where the plaintiff is an inmate and the defendant Lt. Price is a Correctional Officer. In his amended complaint (doc. 71), the plaintiff alleges that he approached Lt. Price for cleaning chemicals for his cell. Lt. Price was in a control booth, equipped with a communication flap, so that an inmate on the outside of the booth could speak into the flap to communicate with those inside. Speaking into the flap, the plaintiff asked Lt. Price for the cleaning chemicals, but she yelled at him, telling him no. The plaintiff alleges that both he and Lt. Price then used vulgar language towards each other and that Lt. Price ordered him to get away from the control booth flap. The plaintiff did not move away, but instead used another expletive, resulting in Lt. Price coming to the control booth flap and spraying pepper spray through it, into the plaintiff's face. Lt. Price radioed for assistance, and the plaintiff was escorted to the medical unit, where he was treated by a nurse, and then to "lock-up" in the Restricted Housing Unit ("RHU") for 20 days "without a charge" (doc. 71 at 7-9). He was told that Lt. Price had filed an incident report against him, but someone higher up stopped the charge because "they knew she was being dishonest" (*id*. at 9). He alleges that as a result of being sprayed his eyes burned for one hour and were swollen for three days, his chest hurt for five days, and he had mental and emotional injuries for seven days (*id.* at 10).

Lt. Price denies that she used excessive force when she sprayed the plaintiff, as he was using loud and abusive language to her and other inmates at the time, which is a violation of SCDC policy (doc. 86-1, Price aff. ¶¶ 6-9). In addition, the plaintiff was carrying a bottle of liquid, and as she leaned down to communicate through the flap, the plaintiff "moved aggressively toward the flap near my face and at one point moved part of

2

his arm holding the bottle into the flap" (*id*. ¶ 10). In her affidavit, Lt. Price states "[t]hat due to Plaintiff's use of abusive language and threatening gesture with the bottle of unidentified liquid, I took my chemical munitions cannister and administered two short bursts toward the Plaintiff so that he would discontinue his loud, disruptive and threatening behavior" (*id*. ¶ 11). Afterwards, she completed an incident report and recommended that the plaintiff be charged with SCDC policy violations for threatening and attempting to throw a substance on her and for using profane language (*id*. ¶¶ 16-17 & ex. A). Lt. Price also testifies that she had a confrontation with the plaintiff the day before, in which he used abusive language (*id.* ¶¶ 21-27 & ex. B, C).

Sgt. Ricky Truesdale witnessed the incident, seeing the plaintiff cursing and holding the bottle of liquid near the flap, then being sprayed with short bursts of chemical munitions. Afterwards, he escorted the plaintiff away to be checked by the medical staff. Sgt. Truesdale stated, "I observed no injury to the plaintiff nor did he complain of any injury" (doc. 86-2, Truesdale aff. ¶¶ 4-10).

Lt. Price's superior, Associate Warden Kevin Ford, reviewed the incident report and stated that "the canister of munitions used in this incident had a beginning weight of 143 grams and ending weight of 138 grams, resulting in a total of only 5 grams having been used toward the plaintiff. Based upon my training and experience, this constitutes a relatively small amount of chemical munitions and further supports that Ms. Price used the minimum force necessary" (doc. 86-5, Ford aff. ¶ 8). He further states that while Lt. Price's charges against the plaintiff for SCDC policy violations were ultimately dropped, "it is not unusual after a cooling down period, which may include the inmate spending time in the RHU, as in this case, for charges to be dropped or go unprosecuted" (*id*. ¶ 11).

Also in support of Lt. Price's motion for summary judgment, Nursing Supervisor Michelle Ussery provides the plaintiff's medical records and her affidavit stating that after the incident, the plaintiff "had some eye redness and complained of a headache

but did not appear to be in distress. Plaintiff was allowed to wash out his eyes, was given Tylenol and released without any further treatment" (doc. 86-4, Ussery aff. ¶ 7). She also states that she examined the plaintiff six days later, and "he expressed that all symptoms he attributed to the alleged use of force incident had subsided. The Plaintiff's vital signs were normal and he was released without further treatment" (*id*. ¶ 8).

In the plaintiff's response to Lt. Price's motion for summary judgment (doc. 90) and in his own motion for summary judgment (doc. 96), the plaintiff disputes portions of the affidavits of Lt. Price and Sgt. Truesdale. He further asserts that the Ajax bottle he possessed during the incident was empty (doc. 96 at 2-3). He reiterates his contention that because Lt. Price was within the control booth, her use of chemical munitions was excessive, since he could not have posed a physical threat to her (*id.* at 8-9). He also argues that proof of her liability is demonstrated in her superior's decision to not pursue the charges she cited against him (*id.* at 5-7).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). The "core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  In determining whether prison officials acted maliciously and sadistically, courts should balance several factors including: (1) the need for the application of force, (2) the relationship between that need and the amount of force used, (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts to temper the severity of a forceful response.  *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008).  Correctional officers violate the Eighth Amendment when they "use mace, tear gas, or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Id*. at 240.  In *Sharp v. Longe,* this court analyzed the use of chemical munitions or mace as relevant here:

> [M]ace can be constitutionally used in small quantities to control a "recalcitrant inmate."  A limited application of mace may be "much more humane and effective than a flesh to flesh confrontation with an inmate."  Moreover, prompt washing of the maced area of the body will usually provide immediate relief from pain. Furthermore, because a limited use of mace constitutes a relatively "mild" response compared to other forms of force, the initial application of mace indicates a "tempered" response by the prison officials.

C.A. No. 1:09-2402-JFA-SVH, 2011 WL 489938, at *3 (D.S.C. Jan. 25, 2011) (internal citations omitted), *R&R adopted by* 2011 WL 489936 (D.S.C. Feb. 7, 2011).

Lt. Price is entitled to summary judgment.  While some facts are in dispute, the material facts here are not.  The plaintiff admits that while speaking into the flap and holding an Ajax bottle, he used vulgar language towards Lt. Price when he argued with her about cleaning supplies.  He was instructed to get away from the flap but failed to comply. It was then that Lt. Price sprayed him with chemical munitions through the flap. The plaintiff argues that because "there was a physical barrier between her and I in the form of the control booth's concrete block and glass barred wall, [it] prevented me any opportunity for possible physical violence against her" (doc. 71, p. 7). However, the flap allowed external access to the interior of the control room and specifically to Lt. Price, positioned on the

other side of the flap. Given the plaintiff's admitted possession of the Ajax bottle, vulgar language, and failure to leave the flap as instructed, the need for the application of some force by Lt. Price to end the confrontation was appropriate. Moreover, the uncontested minimal amount of chemical munitions administered (two short bursts totaling five grams) was a reasonable use of minimal force to quell the threatening and disruptive behavior of the plaintiff. As the plaintiff himself admits, he received medical attention immediately, and the affects of the chemical munitions were only temporary, with burning sensations to his eyes subsiding after one hour, and all lingering affects resolved within a week. The minimal amount of chemical munitions administered, followed by Lt. Price's radio for assistance, and the plaintiff's immediate medical care, effectively demonstrate the efforts by Lt. Price and her colleagues to temper the severity of the forceful response here. Accordingly, the plaintiff cannot meet the subjective component of his excessive force claim.

Further, the plaintiff's argument that the dismissal of Lt. Price's SCDC policy violations against him should defeat summary judgment for her, and instead entitle him to summary judgment, is without merit. The plaintiff provides no proof, only his own surmise and speculation, that the charges were dropped because Lt. Price applied excessive force against him. As addressed by the affidavit testimony of Associate Warden Ford, decisions to go forward with charges are internal matters for SCDC personnel and involve various considerations including "both the circumstances and whether or not an inmate has spent time in the . . . RHU" (doc. 86-5, Ford aff. ¶ 10). In short, the favorable resolution of the policy violations against him alone, even when considered with all other facts, is insufficient to defeat summary judgment for Lt. Price.

### CONCLUSION AND RECOMMENDATION

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendant Price's motion for summary judgment (doc. 86) be granted and that the plaintiff's motion for summary judgment (doc.

96), be denied. Should the district judge adopt this recommendation, the plaintiff's pending discovery motions (docs. 89, 102) should be denied as moot.  The attention of the parties is directed to the notice on the next page.

   IT IS SO RECOMMENDED.

                 s/Kevin F. McDonald
                 United States Magistrate Judge

October 9, 2018
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 300 East Washington Street, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).