# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| Benjamin Heyward, )<br>)<br>    Plaintiff, )<br>v. )<br>)<br>A. Price, )<br>)<br>    Defendant. )<br>_____) | Civil Action No.: 6:18-cv-00150-JMC<br><br>**ORDER AND OPINION** |

Plaintiff Benjamin Heyward filed this civil rights action against Defendant Audrey Price ("Defendant" or "Lt. Price") pursuant to 42 U.S.C. § 1983 alleging that Defendant used excessive force against Plaintiff in violation of his constitutional rights. (ECF No. 71.)

This matter is before the court on Defendant's Motion for Summary Judgment (ECF No. 86), Plaintiff's Motion for Summary Judgment (ECF No. 96), his two Motions for Discovery (ECF Nos. 89, 102), and his Motion to Amend/Correct the Complaint (ECF No. 126). In accordance with 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(g) (D.S.C.), the matter was referred to United States Magistrate Judge Kevin F. McDonald for pretrial handling. On October 9, 2018, the Magistrate Judge issued a Report and Recommendation in which he recommended that the court grant Defendant's Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment, and deny Plaintiff's remaining Motions as moot.[1] (ECF No. 110 at 7–8.) Plaintiff filed Objections to the Magistrate Judge's Report and Recommendation, which are presently before the court. (ECF No. 115.) For the reasons set forth below, the court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 86), **DENIES** Plaintiff's Motion for Summary Judgment (ECF

---

[1] The court observes that Plaintiff's Motion to Amend/Correct the Complaint was filed after the Magistrate Judge entered his Report and Recommendation.

1

No. 96), and **DENIES AS MOOT** all remaining pending Motions. (ECF Nos. 89, 102, 126.)

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this matter are discussed in the Report and Recommendation. (ECF No. 110 at 1–4.) The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate and incorporates it by reference. The court will only reference herein additional facts viewed in the light most favorable to Plaintiff that are pertinent to the analysis of his claims.

Plaintiff is an inmate presently incarcerated at the McCormick Correctional Institution in McCormick, South Carolina. Plaintiff alleges that on April 13, 2017, when he was an inmate at the Kershaw Correctional Institution in Kershaw, South Carolina, Defendant used excessive force by spraying pepper spray in Plaintiff's face during an argument. (*See generally* ECF No. 71 at 7.) Specifically, Plaintiff alleges:

> On 4-13-2017, I went into hickory unit sallyport and I asked unit counselor Mr. R. Truesdale to tell inmate Patrick Brown #289401 '[h]ead ward keeper,' to give [me] some cleaning chemical because I needed to clean my cell. Mr. Truesdale told me unit manager, 'Lieutenant' Price was in the control booth, I must ask her. I went to the control booth flap and asked Lt. Price to tell inmate Brown to give me some cleaning chemical because I needed to clean my cell. Lt. Price yelled at me and told me I wasn't getting any cleaning chemical. I then told Lt. Price I was going to write her up, and she yelled and told me she don't fuckin care, and I needed to get my black ass away from the control booth flap. I told Lt. Price, she needed to stop[] acting like a bitch. Lt. Price then came from around the control booth panel, to the control booth flap, and sprayed pepper spray into my face, eyes, nose and mouth. When I removed my face away from the control booth flap, some pepper spray almost went on Mr. Truesdale. Lt. Price got on the radio, and told the yard officer, she sprayed me with pepper spray because I called her a bitch.

(*Id.* ¶¶ 1–7.)

> After being sprayed with pepper spray, I was escorted by Mr. Truesdale to medical to be treated. At medical[,] Mr. Truesdale told my mental [h]ealth [c]ounselor Ms. Gardner, and nurse Cappadonia, Lt. Price and I was arguing over cleaning chemical and Lt. Price sprayed me with pepper spray through the control booth flap. Nurse Cappadonia then told me I shouldn't [have] been aggressive at the flap. After being treated by nurse Cappadonia, I was escorted by Mr. Truesdale to the holding cell in the administration building. While in the holding cell, Mr. Ford, 'Major,' came and spoke to me about the incident. When I told Major Ford, Lt. Price sprayed me with pepper spray because I told her she needed to stop[] acting like a bitch, Major Ford went to hickory unit and spoke with Lt. Price about the incident. Major Ford thought Lt. Price sprayed me with pepper spray on the wing, not through the control booth flap.

(ECF No. 71 at 8 ¶¶ 10–12.)

> On 4-17-2017, while being on lock up, I was being escorted from the shower by Mr. Ellis, corporal, when he told me Lt. Price is now saying I placed my arm into the control booth flap, and I tried to throw a substance on her, and I threaten[ed] to harm her, that's why she sprayed me with pepper spray. On 4-27-2017, while being on lock up, Major Ford came and he told me he signed an incident report from Lt. Price, stating I placed my arm into the control booth flap and I tried to throw a substance on her and I threaten[ed] to harm her. I told Major Ford I never received the charge, someone higher than the Major stopped the charge because they know Lt. Price was being dishonest[] about the incident.

(*Id.* at 9 ¶¶ 16–18.)

As a result of being pepper sprayed, Plaintiff alleges that he suffered (1) burning eyes for one hour, (2) swollen eyes for three days, (3) a headache for seven days, (4) chest pain for five days, and (5) mental and emotional injuries for seven days. (*Id.* at 10 § V.) After exhausting his administrative remedies through the South Carolina Department of Corrections' ("SCDC") inmate grievance process (*see* ECF No. 71 at 19–21), Plaintiff filed a Complaint in this court on January 17, 2018. (ECF No. 1.) In the Complaint, Plaintiff alleged that he was subjected to excessive force by Defendant in violation of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. (*Id.* at 4.) After receiving leave from the court (ECF No. 69), Plaintiff filed an Amended Complaint (ECF No. 71) on June 22, 2018.[2]

---

[2] The court observes that Plaintiff's Amended Complaint is identical to the initial Complaint but

Thereafter, on August 20, 2018, Defendant filed a Motion for Summary Judgment (ECF No. 86) arguing that Plaintiff failed to allege facts sufficient to state a claim under the Fourth, Eighth, or Fourteenth Amendments (*id.* at 8, 19) and, alternatively, even if Plaintiff sufficiently stated a claim, Defendant was entitled to qualified immunity (*id.* at 17). Plaintiff, then, filed Motions to Compel Discovery (ECF No. 89) on August 22, 2018, and September 17, 2018, a Response in Opposition to Defendant's Motion for Summary Judgment (ECF No. 90) on August 29, 2018, as well as his own Motion for Summary Judgment (ECF No. 96) on September 7, 2018.

Upon his review of the aforementioned Motions, the Magistrate Judge issued a Report and Recommendation recommending that the court grant Defendant's Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment, and deny as moot all remaining Motions. (ECF No. 110 at 7–8.) The Report concluded that none of the material facts at issue were disputed, therefore, Defendant's actions were reasonable. (*Id.* at 6–7.) Additionally, the Magistrate Judge believed that Plaintiff's arguments were without merit and failed to provide any proof for the stated claims sufficient to defeat summary judgment in favor of Defendant. (*Id.* at 7.)

On October 22, 2018, Plaintiff filed Objections to the Report and Recommendation (ECF No. 115) and a Motion to Amend/Correct the Complaint on February 27, 2019. (ECF No. 126.)

## II. JURISDICTION

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 based on Plaintiff's claims against Defendant under 42 U.S.C. § 1983, which permits an injured party to bring a civil action against a person who, acting under color of state law, ordinance, regulation, or custom, causes the injured party to be deprived of "any rights, privileges, or immunities secured

---

for the addition of four paragraphs of facts regarding the initial incident, none of which are dispositive in this case. (*See* ECF No. 71-1 at 1–3.)

by the Constitution and laws." *Id.*

### III. STANDARD OF REVIEW

#### A. Report and Recommendation

The Magistrate Judge's Report and Recommendation is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge only makes a recommendation to this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Id.* The court reviews *de novo* only those portions of the Report and Recommendation to which specific objections are filed. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). The court reviews those portions which are not specifically objected to only for clear error. *Id.* at 316. The court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

#### B. Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

When considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts

5

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. Further, to show that a genuine issue of material fact exists, the non-moving party must set forth facts beyond "[t]he mere existence of a scintilla of evidence." *Id.* at 252. The non-moving party must present evidence sufficient to demonstrate that a reasonable jury could return a verdict for the non-moving party in order to avoid summary judgment. *See id.* at 248.

IV. ANALYSIS

A. The Report and Recommendation

Upon his review, the Magistrate Judge determined that Plaintiff could not "meet the subjective component of an excessive force claim" under *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008). (ECF No. 110 at 7.) In reaching this conclusion, the Magistrate Judge observed that because Plaintiff "admits that while speaking into the flap and holding an Ajax bottle, he used vulgar language towards Lt. Price when he argued with her about cleaning supplies," Defendant's application of some force to end the confrontation with Plaintiff was appropriate. The Magistrate Judge further observed that his conclusion is appropriate because (1) Defendant used a "minimal amount of chemical munitions administered (two short bursts totaling five grams) . . . to quell the threatening and disruptive behavior of the plaintiff" and (2) "he received medical attention immediately, and the [e]ffects of the chemical munitions were only temporary, with burning sensations to his eyes subsiding after one hour, and all lingering affects resolved within a week." (*Id.* at 7.) Moreover, the Magistrate Judge acknowledged that he was not persuaded by Plaintiff's argument that "the dismissal of Lt. Price's SCDC policy violations against him should defeat summary judgment for her, and instead entitle him to summary judgment." (*Id.*) As a result, the Magistrate Judge recommended that the court grant Defendant's Motion for Summary Judgment,

6

deny Plaintiff's Motion for Summary Judgment, and deny as moot all remaining Motions. (*Id.* at 7–8.)

B.      Plaintiff's Objections to the Report and Recommendation

Plaintiff stated the following fourteen objections to the Report[3]:

Objection 1 (ECF No. 110 at 2): The [A]jax bottle was empty.

Objection 2 (*Id.*): [D]efendant [P]rice['s] use[] [of] excessive force, was not in good faith.

Objection 3 (*Id.*): [D]efendant [P]rice was wrong to come from around the control booth's panel, to the control booth's flap and spray[] pepper spray through the flap, into the [P]laintiff's face.

Objection 4 (*Id.* at 3): The [A]jax bottle was empty.

Objection 5 (*Id.*): [D]efendant [P]rice used abusive language toward the [P]laintiff first, when she yelled and told [P]laintiff she don't fuckin care if the [P]laintiff write her up, for not giving the [P]laintiff any cleaning supplies, and that [P]laintiff needed to get his black ass away from the control booth's flap.

Objection 6 (*Id.*): [D]efendant [P]rice used more than five grams of chemical munitions against the [P]laintiff, and not in good faith.

Objection 7 (*Id.*): [P]ursuant to SCDC policy and procedures OP-22.14, 21, disciplinary charges for inmates in the Restrictive Housing Unit (RHU), who commit Level 3, 4, or 5 disciplinary offenses may have the incidents disposed of by the major/responsible authority utilizing SCDC Form '19-29A.' The infraction will be entered into the offender management system disk screen using type action '03' which will show as, 'closed-other action taken/informally resolved.' All Level 1 and 2 disciplinary offenses will be disposed of formally at the discretion of the 'Disciplinary Hearing [O]fficer, DHO.' (NOTE: the closed/informally resolved cases will remain a part of the inmate's automated disciplinary history).

Objection 8 (*Id.*): The [P]laintiff agree, but [N]urse [U]ssery did not mention that the [P]laintiff complained about having sharp chest pain[] (CP). *See* [P]laintiff medical record, (encounter 667.)

---

[3] Each objection is stated verbatim from Plaintiff's filing and is specified with the corresponding page(s) of the Report to which the objection applies. The fourteen objections can be grouped into the following four arguments: (1) The Ajax bottle was empty; (2) Defendant's use of excessive force was not in good faith; (3) Defendant sprayed more than five grams of pepper spray on Plaintiff; and (4) Defendant's actions injured Plaintiff. However, for the reasons observed herein, it is unnecessary to address each objection *ad seriatim* and this decision effectively overrules them.

Objection 9 (*Id.* at 4): The [P]laintiff was examined by [N]urse [U]ssery six days after the incident, on that day, the [P]laintiff told [N]urse [U]ssery he got sprayed with pepper spray in his face six days ago, and as a result of inhaling the pepper spray, he had sharp chest pain. [P]laintiff also told [N]urse [U]ssery he drink[s] a lot of water and had taken some Tylenol and it helped his sharp chest pain. [P]laintiff also told [N]urse [U]ssery he still had a little nagging headache, that comes and go[e]s. [N]urse [U]ssery instructed the [P]laintiff to continue drinking 8–10 cups of water daily and given the [P]laintiff a starter pack Tylenol for his headache. See [P]laintiff medical record, (encounter 668.) (doc. 86-4 [U]ssery Aff.).

Objection 10 (*Id.* at 6): [D]efendant [P]rice used excessive force not in good faith. Therefore, she is not entitled to summary judgment.

Objection 11 (*Id.* at 7): This was not a serious matter for any need for force and [D]efendant [P]rice used more than five grams of chemical munitions against the [P]laintiff.

Objection 12 (*Id.*): As a result of [D]efendant [P]rice spray[ing] chemical munitions into the [P]laintiff[']s face, eyes, nose and mouth, and as a result of the [P]laintiff's inhaling the chemical munitions, the [P]laintiff had sharp chest pain for five days, which is a serious medical need, if left unattended, 'poses' a substantial risk of serious harm. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th [C]ir[.] 2001).

Objection 13 (*Id.*): [A]ssociate warden Ford told the [P]laintiff while the [P]laintiff was in the RHU, that he signed the incident report made by [D]efendant [P]rice. Lt. Danley told [P]laintiff he had [D]efendant [P]rice threatening to inflict harm on an employee charge in his office on his desk, but the [P]laintiff did not get served with the charge because the staffs knew [D]efendant [P]rice was being dishonest about the incident. The [P]laintiff[']s proof is SCDC policy OP-22.14, 21. Disciplinary charges for inmates in Restrictive Housing [U]nits (RHU) Inmates Housed in RHU, commit level 3, 4, or 5 disciplinary offenses may have the incidents disposed of by the major/responsible authority utilizing SCDC Form 19-29-A[.] The infraction will be entered into the offender management system disc screen using type action '03' which will show as, 'closed-other action taken/ informally resolved.' All Level 1 and 2 disciplinary offenses will be disposed of formally at the discretion of the Disciplinary Hearing [O]fficer (DHO). Note: These closed/informally resolved cases will remain a part of the inmate's automated disciplinary history.' The [P]laintiff was accused of threatening to inflict harm on an employee, which is a Level 2 disciplinary offense. Therefore, Associate [W]arden Ford[] did not follow SCDC policy and procedure, when he stated in his Affidavit; that it is not unusual after a cooling down period, which may include the inmate spending time in the RHU, as in this case. For charges to be dropped or go unprosecuted, (SCDC policy OP-22.14-21), upon information and belief, [D]efendant [P]rice, rewrote the incident report, [a]fter the [P]laintiff filed this lawsuit.

Objection 14 (*Id.*): The [P]laintiff's [M]otion for Summary Judgment should [have] been granted, due to the evidence[] supporting the [P]laintiff['s] motion, also, the [P]laintiff's discovery motions (docs 89, 102) should not be denied as moot.

(ECF No. 115 at 4 ¶ 11–10 ¶ 14.) Based on the foregoing, Plaintiff requests that the court grant both his Motion for Summary Judgment and his Motion for Discovery. (*Id.* at 10.)

C.  Defendant's Response to Plaintiff's Objection to the Report and Recommendation

Defendant responded to Plaintiff's Objections asserting that he "repeats the same arguments he made in prior filings with this [c]ourt . . .[,] makes only conclusory allegations and does not cite to any actual evidence in the record to specifically support his claims . . .[, and] does not object to any material fact findings made by this [c]ourt." (ECF No. 122 at 1.) As a result, "Defendant opposes th[e] Objection and respectfully requests that this [c]ourt adopt Magistrate Judge McDonald's Report and Recommendation." (*Id.*)

D.  The Court's Review

In this matter, Plaintiff asserts that he was subjected to excessive force when pepper sprayed in violation of 42 U.S.C. § 1983. "Title 42 U.S.C. § 1983 is a federal statutory remedy available to those deprived of rights secured to them by the Constitution and, in a more sharply limited way, the statutory laws of the United States." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "One alleging a violation of section 1983 must prove that the charged state actor (1) deprived plaintiff of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was performed under color of the referenced sources of state law found in the statute." *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001)). "[A]nalysis of an excessive force claim brought under § 1983 begins with 'identifying the specific constitutional right allegedly infringed by the challenged application of force.'" *Sawyer v. Asbury*, 537 F. App'x 283, 290 (4th Cir. 2013) (quoting *Orem v. Rephann*, 523 F.3d 442, 445 (4th Cir. 2008)). Although Plaintiff has

9

alleged a violation of rights under the Fourth, Eighth, and Fourteenth Amendments, he is a convicted prisoner and, therefore, only the Eighth Amendment is relevant to the court's analysis. *See id.* at 290 (In *Graham v. Connor*, "[t]he Court held that claims for the use of excessive force in effectuating an arrest or other seizure are governed by the Fourth Amendment's prohibition against 'unreasonable' seizures; claims of excessive force against a convicted prisoner are governed by the Eighth Amendment's prohibition of 'cruel and unusual punishment'; and claims of post-arrest excessive force against an arrestee or pre-trial detainee, as here, are governed by the Due Process Clause of the Fourteenth Amendment, which prohibits before conviction 'the use of excessive force that amounts to punishment.'" (citing *id.*, 490 U.S. 386, 395 & n.10)). Accordingly, Defendant is entitled to summary judgment on Plaintiff's Fourth and Fourteenth Amendment claims for excessive force.

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const., amend. VIII. The Eighth Amendment's proscription of cruel and unusual punishments governs prison officials' use of force against convicted inmates. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). To prove the use of excessive force in violation of the Eighth Amendment, a plaintiff is required to demonstrate that the prison official acted with a sufficiently culpable state of mind (subjective component) and the injury inflicted was sufficiently serious (objective component). *Iko*, 535 F.3d at 238 (citing *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)).

To prove the subjective component, a plaintiff must show that an officer acted with a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298. "The state of mind required in excessive force claims is "wantonness in the infliction of pain." Iko, 535 F.3d at 239 (citing and quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). "[T]he 'core judicial inquiry' regarding the

subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (citing and quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). There are several relevant factors to consider in determining whether constitutionally excessive force was used. These include "(1) 'the need for the application of force'; (2) 'the relationship between that need and the amount of force used'; (3) 'the extent of any reasonably perceived threat that the application of force was intended to quell'; and (4) 'any efforts made to temper the severity of a forceful response.'" *Iko,* 535 F. 3d at 238 (quoting *Whitley*, 475 U.S. at 321).

As to the objective component of the test, an injury is "sufficiently serious" if it rises above the level of *de minimis* harm. *Hudson,* 503 U.S. at 9–10 (rejecting the argument that "minor" injuries are not actionable). This rule aligns with "society's expectations" regarding the use of force: if an inmate can show the malevolence required to prove the subjective component, the actual injury suffered as a result of such malevolence need not be great for "contemporary standards of decency [to be] violated." *Id*. at 9. The Fourth Circuit has recognized that

> there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. In these circumstances, we believe that either the force used will be of a sort repugnant to the conscience of mankind, and thus expressly outside the *de minimis* force exception, or the pain itself will be such that it can properly be said to constitute more than *de minimis* injury.

*Norman v. Taylor*, 25 F. 3d 1259, 1266 n.4 (4th Cir. 1994) (internal citations and quotations omitted); *see also Williams v. Benjamin,* 77 F.3d 756, 762 n.2 (4th Cir. 1996) (noting that "courts should be wary of finding uses of force that inflict 'merely' pain but not injury to be *de minimis*, and therefore beyond requiring justification under the Eighth Amendment.").

In his docket filings, Plaintiff asserts that his evidence shows that he "was not a threat to [] [D]efendant" because she "was secured in the control booth" where "there was a physical barrier

11

between [] [D]efendant and [P]laintiff." (ECF No. 96 at 9.) Plaintiff further asserts that Defendant's spraying of pepper spray was unjustified because "the control booth's concrete block and glass barred wall [] prevented [] [P]laintiff [from having] any opportunity for possible physical violence against [] [D]efendant." (*Id.*) In contrast, Defendant contends that she appropriately used two short bursts of chemical munitions totaling five grams "due to Plaintiff's use of abusive language and threatening gesture with the bottle of unidentified liquid." (ECF No. 86-1 at 1 ¶ 6–2 ¶ 12, 5.) In considering the parties' respective positions in the context of the *Iko* factors, the court observes that genuine issues of material fact exist with regard to each and every one of the factors. Accordingly, the court finds that neither party is entitled to summary judgment based on the subjective component of an Eighth Amendment excessive force claim.

However, where Plaintiff's case fails is the objective component. In his Amended Complaint, Plaintiff alleges that he suffered (1) burning eyes for one hour, (2) swollen eyes for three days, (3) a headache for seven days, (4) chest pain for five days, and (5) mental and emotional injuries for seven days. (ECF No. 71 at 10 § V.) In support of his allegations, Plaintiff provided simply a one-page medical summary that states the following:

> 04/19/17: I FEEL BETTER NOW. I HAD SENT A REQUEST FOR SICK CALL BUT MY CHEST HAS STOPPED HURTING. I GOT GASSED ABOUT 6 DAYS AGO AND THAT IS WHEN MY CHEST STARTED HURTING. I STARTED DRINKING ALOT MORE WATER AND MY CHEST HAS NOT HURT. I DID TAKE SOME TYLENOL THE OTHER NIGHT AND IT HELPED. I DO HAVE A LITTLE NAGGING HEADACHE X2-3 DAYS THAT COMES AND GOES. O> TEMP=097.6 PULSE= 54 RESP=16 BP=118/ 70 WEIGHT=l42 02 SAT= 0 49 YEARS OLD, 02 SAT 99%, SKIN COLOR NORMAL, TALKING WITH NO DIFFICULTY, RESPIRATIONS EVEN & NONLABORED, LUNGS CLEAR & EQUAL BILATERAL, HEART RATE & RHYTHM REGULAR. A> DEFER P> INSTRUCTED TO CONTINUE DRINKING 8-10 CUPS OF WATER DAILY. MAY ISSUE STARTER PACK TYLENOL.

> 04/13/17: 49 YO BLACK MALE, NKDA. TX BY CCC. SEE PF5 FOR LIST. ALSO HAS HYPERLIPIDEMIA. NOTED TO HAVE RED LEFT SCLERA. REPORTS H/A AND SHARP CP. DOES NOT APPEAR TO BE IN DISTRESS. SKIN WARM AND DRY, LUNGS CLEAR. HHRR NO SOB. USED EYE WASH WHILE IN MEDICAL. A> EXPOSURE TO MUNITIONS GAS. P> GIVEN SINGLE DOSE OF TYLENOL FOR H/A. EXPLAINED HE CAN RTC PRN. LEFT MEDICAL TO BE TAKEN TO HOLDING CELL.

(ECF No. 96-7 at 13.) Additionally, Defendant submitted an affidavit from Michelle Ussery, the nurse supervisor at the Kershaw Correctional Institution, who stated:

> That on April 13, 2017, the Plaintiff was examined by Donna L. Cappadonia, R.N., following the use of force incident at issue. The records note that the Plaintiff had some eye redness and complained of a headache but also indicate[d] that he did not appear to be in distress. Plaintiff was allowed to wash out his eyes, was given Tylenol and released without any further treatment.
>
> That on April 19, 2017, I examined the Plaintiff during sick call and he expressed that all symptoms he attributed to the alleged use of force incident had subsided. The Plaintiff's vital signs were normal and he was released without further treatment.

(ECF No. 86-4 at 2 ¶¶ 7, 8.)

Upon its consideration of the aforementioned, the court finds that Plaintiff cannot establish a "sufficiently serious" injury and that, as a matter of law, Plaintiff suffered *de minimis* harm as a result of being sprayed with pepper spray. The issue of whether an injury is *de minimis* may be found "as a matter of law." *Carter v. Morris*, 164 F.3d 215, 219 n.3 (4th Cir. 1999) (plaintiff's claimed injury is so "insubstantial that it cannot as a matter of law support her claim . . . ."). In the Fourth Circuit, temporary medical issues caused by the use of chemical munitions, such as pepper spray and mace, do not cause more than *de minimis* pain or injury, provided the inmate is promptly provided with medical care or an adequate opportunity to rinse the chemicals from his person. *See e.g.*, *Jackson v. Morgan*, No. 00–6129, 2001 WL 1116275, at *3–5 (4th Cir. Sept. 24, 2001) (concluding 12 blasts of pepper spray did not cause more than *de minimis* injury); *Germain v. Ruzicka*, No. 99–6979, 2000 WL 139255, at *2–3 (4th Cir. Feb. 8, 2000); *Williams v. Dehay*,

Nos. 94-7114, 94-7115, 1996 WL 128422, at *2–3 (4th Cir. Mar. 21, 1996) (concluding the use of mace caused no more than *de minimis* pain or injury); *Wolfe v. Bodison*, C.A. No. 8:09-0261-PMD, 2010 WL 374567, at *7 (D.S.C. Feb. 2, 2010) (Injury was *de minimis* in that "[a]lmost all persons suffer a temporary adverse reaction to pepper spray or mace."); *Hicks v. Simpkins*, No. Civ. A. 7:06CV00463, 2006 WL 2303179, at *3 (W.D. Va. Aug. 9, 2006) (pepper spray). In this regard, a careful review of the medical evidence submitted by the parties leads to the conclusion that Plaintiff only suffered *de minimis* injuries. Because Plaintiff's injuries are *de minimis*, Defendant is entitled to summary judgment based on the objective component of Plaintiff's Eighth Amendment claim for excessive force.[4]

## V. CONCLUSION

Because the court finds that Plaintiff cannot satisfy the objective component of an Eighth Amendment excessive force claim, the court **ACCEPTS IN PART** the Magistrate Judge's Report and Recommendation (ECF No. 110) and incorporates it herein by reference. Therefore, upon careful consideration of the entire record, the court hereby **GRANTS** Defendant Audrey Price's Motion for Summary Judgment (ECF No. 86), **DENIES** Plaintiff Benjamin Heyward's Motion for Summary Judgment (ECF No. 96), **DENIES AS MOOT** Plaintiff's Motions for Discovery and

---

[4] "However, even if a prisoner's injuries are de minimis, he may still recover if 'extraordinary circumstances' are present." *Peoples v. SCDC*, Civil Action No. 8:07-3475-CMC-BHH, 2008 WL 11417045, at *3 (D.S.C. Sept. 10, 2008) (*Norman*, 25 F.3d at 1263). "Extraordinary circumstances are present when the force used is 'diabolic,' 'inhuman,' or repugnant to the conscience of mankind, or the pain itself constitutes more than de minimis injury." *Id.* (citing *Hudson*, 503 U.S. at 8). "Under such circumstances, even relatively minor injuries could constitute excessive force in violation of the Eighth Amendment." In this case, the court finds that Plaintiff's allegations, do not, in any respect, "reach the level of 'diabolic,' or 'inhuman' conduct, or that which is repugnant to the conscience of mankind." *Id.* As such, Plaintiff's allegations do not rise to the level of "extraordinary circumstances."

his Motion to Amend/Correct the Complaint,[5] and **OVERRULES** his Objections. (ECF Nos. 89, 102, 115, 126.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 29, 2019
Columbia, South Carolina

---

[5] In the Motion to Amend the Complaint filed after entry of the Report and Recommendation, Plaintiff makes additional allegations of Defendant's dishonesty that do not affect the court's determination in this matter.